### WILLIAM J. MURPHY v. W. H. & F. W. CANE, INCORPORATED.

Argued February 18, 1910—Decided June 13, 1910.

The president of a building construction company has no implied power, by virtue of his office as such, to award subcontracts on construction work for which his company has the main contract.

---

On rule to show cause.

Before Justices GARRISON, SWAYZE and PARKER.

For the plaintiff, *Collins & Corbin.*

For the defendant, *William D. Edwards.*

The opinion of the court was delivered by

PARKER, J. The plaintiff's verdict rests on the claim that he was employed by defendant to do the plumbing work on a new public school in Jersey City; that he made a bid of $16,-850, which was accepted by defendant, but that defendant afterwards refused to let plaintiff do the work and awarded the contract to other parties. There was a verdict of $1,500 for profit of which plaintiff was deprived by this refusal.

Several grounds for a new trial were argued, but we think only one need be discussed, viz., the failure to prove a contract by the defendant or by its lawfully authorized agent. Defendant was a corporation; William H. Cane, its president. The evidence shows that on or about January 15th the contract for the entire work of building the school had been awarded to the defendant; plaintiff's testimony is that he met W. H. Cane, by appointment, offered orally to do the plumbing for $16,850, and that Cane said: "It is your job. That is, you can go ahead with that. I want water in by Monday," and to confirm the quotation by mail; that plaintiff secured a water permit for the building and paid $50 for it, but the work was stopped by a *certiorari* for several months, so he returned the permit and received his money back. Plaintiff's bookkeeper, a Miss Harris, testified that she had prepared, by plaintiff's direction, a formal bid in writing, the text of which was testified to, and mailed it to defendant at its New York address, but that no answer was ever received. The award of the main contract to defendant was ultimately set aside, and the contract reawarded to defendant. Plaintiff hearing of this, saw W. H. Cane, as he says, and testified that Cane wanted him to reduce his bid by $350, which plaintiff refused, whereupon plaintiff wrote defendant in July proffering himself as ready to proceed "as per contract of January 15th," and defendant replied by mail that it knew of no such contract and asking for a copy of same, at which point the correspondence seems to have closed. Defendant denied ever having received the estimate.

The case is bare of evidence that the corporation itself, by its board of directors, ever made or assented to any employment of, or contract with, plaintiff. Evidence is also lacking to show that by the by-laws, or by any resolution or other formal action of the defendant corporation, the president was authorized to make for it any such contracts as that set up by plaintiff. Such a contract was not a mere incidental matter within the ordinary scope of the president's duties; it was an important business transaction involving many thousand dollars, and naturally calling for care and consideration, and, consequently, for the combined judgment of the directors.

A great multitude of decisions on the implied powers of the president of a corporation is collected in 10 *Cyc.* 903 *et seq.,* and also in 14 *L. R. A.* 356, a number of which form part of our own jurisprudence. In most of those cited below, such power was denied. *Leggett* v. *New Jersey Manufacturing Co., Saxt.* 541; *Millville, &c., Co.* v. *Goodwin,* 8 *Dick. Ch. Rep.* 448; *Colton* v. *Depew,* 14 *Id.* 126; 15 *Id.* 454; *Cogan* v. *Conover Manufacturing Co.,* 3 *Robb.* 358, 816; *Lister* v. *Selby,* 2 *Id.* 271; *Mausert* v. *Feigenspan, Id.* 671; *Titus* v. *C. and F. R. R.,* 8 *Vroom* 98; *Stokes* v. *Pottery Company,* 17 *Id.* 237; *Raub* v. *Blairstown Creamery Association,* 27 *Id.* 262; *Beebe* v. *Beebe Company,* 35 *Id.* 497; *Collier* v. *Consolidated Lighting Co.,* 41 *Id.* 313; *Demarest* v. *Spiral Riveted Tube Co.,* 42 *Id.* 14.

The situation would be different if it fairly appeared that authority to make this particular contract, or a class of contracts to which it belonged, or contracts generally had been delegated to the president, or if by holding out the president as authorized to make such contracts the corporation had estopped itself from denying such authority. *Fifth Ward Savings Bank* v. *First National Bank,* 19 *Vroom* 513; *Blake* v. *Domestic Manufacturing Co.,* 19 *Dick. Ch. Rep.* 480. It is claimed for the plaintiff that Mr. Cane was so held out by the company; also that he was, or acted as, general manager of its construction work, and that the contract in question was within the line of his duty and authority as such. He was

called by plaintiff as a witness and testified that while he was overseer in the execution of work, he did not decide on the making of contracts—did not make them—that he signed them as president, but that his father was the main business man of the concern, and that the contracts were awarded by the directors. Called for the defendant he testified substantially to the same effect. It was conceded that no minutes of the directors' meetings were kept, but the testimony was consistent that contracts were not let without submission to the board, and there was no proof that this alleged contract had been so submitted.

We think the contract claimed by plaintiff, if agreed to by W. H. Cane, was not within his implied authority as president, and that there was no evidence to show that he was expressly authorized to make it for the company, or that defendant by any course of business had justified plaintiff in supposing it to be within his authority. Hence there should have been a nonsuit on defendant's motion. On this ground the rule to show cause will be made absolute.